UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH VIGIL, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DAK RESOURCES, INC., a Florida corporation; MICHAELS STORES, INC., a Delaware corporation; and DOES 1 through 50, inclusive,<br><br>Defendant, | No. 2:23-cv-00163-TLN-AC<br><br><br>**ORDER** |

This matter is before the Court on Plaintiff Joseph Vigil's ("Plaintiff") Motion to Remand. (ECF No. 5.) Defendant Michaels Stores, Inc. ("Defendant") filed an opposition. (ECF No. 8.) For the reasons set forth below, the Court DENIES Plaintiff's Motion to Remand.

///

///

///

///

1

## I. FACTUAL AND PROCEDURAL BACKGROUND

Defendant, a specialty retail company, employed Plaintiff and other individuals as hourly-paid or non-exempt employees in California. (ECF No. 1-4.) On November 23, 2022, Plaintiff filed this putative class action in San Joaquin Superior Court, alleging violations of the California Labor Code and California Business and Professions Code. (*Id.*) Plaintiff alleges Defendant: (1) failed to pay lawful wages including overtime; (2) failed to provide lawful meal periods; (3) failed to provide lawful rest periods; (4) failed to reimburse employee expenses; (5) failed to timely pay wages during employment; (6) failed to timely pay wages due at termination of employment; (7) failed to comply with itemized employee wage statement provisions; and (8) violated unfair competition law. (*Id.*)

On January 27, 2023, Defendant filed a Notice of Removal to this Court pursuant to the Class Action Fairness Act of 2005 ("CAFA"). (ECF No. 1.) On February 24, 2023, Plaintiff moved to remand, arguing Defendants failed to show by a preponderance of the evidence the amount in controversy ("AIC") exceeds $5,000,000. (ECF No. 5.) On March 10, 2023, Defendant filed an opposition. (ECF No. 8.)

## II. STANDARD OF LAW

A civil action brought in state court, over which the district court has original jurisdiction, may be removed by the defendant to federal court in the judicial district and division in which the state court action is pending. 28 U.S.C. § 1441(a). CAFA gives federal courts original jurisdiction over certain class actions only if: (1) the class has more than 100 members; (2) any member of the class is diverse from the defendant; and (3) the aggregated AIC exceeds $5,000,000, exclusive of interest and costs. *See* 28 U.S.C. §§ 1332(d)(2), (5)(B).

Congress enacted CAFA "specifically to permit a defendant to remove certain class or mass actions into federal court" and intended courts to interpret CAFA "expansively." *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015). As a general rule, removal statutes are to be strictly construed against removal. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). However, "no antiremoval presumption attends cases invoking CAFA." *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014). Nonetheless, "[i]f at any time before final

judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded" to state court.  28 U.S.C. § 1447(c).

A defendant seeking removal under CAFA must file in the federal forum a notice of removal "containing a short and plain statement of the grounds for removal." *Dart Cherokee*, 574 U.S. at 83 (quoting 28 U.S.C. § 1446(a)).  The notice of removal "need not contain evidentiary submissions," rather a defendant's "plausible allegation that the amount in controversy exceeds the jurisdictional threshold" suffices.  *Id.* at 84, 89.  When "a defendant's assertion of the amount in controversy is challenged . . . both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount in controversy requirement has been satisfied." *Id.* at 88.  "The parties may submit evidence outside the complaint including "affidavits or declarations or other 'summary-judgment-type evidence relevant to the amount in controversy at the time of removal.'"  *Hender v. Am. Directions Workforce LLC*, No. 2:19-cv-01951-KJM-DMC, 2020 WL 5959908 *2 (E.D. Cal. Oct. 7, 2020) (internal citation omitted).

When "the defendant relies on a chain of reasoning that includes assumptions to satisfy its burden of proof, the chain of reasoning and the underlying assumptions must be reasonable, and not constitute mere speculation and conjecture." *Id.* (citing *Ibarra*, 775 F.3d at 1197–99). "CAFA's requirements are to be tested by consideration of real evidence and the reality of what is at stake in the litigation, using reasonable assumptions underlying the defendant's theory of damages exposure." *Ibarra*, 775 F.3d at 1198.  Then "the district court must make findings of jurisdictional fact to which the preponderance standard applies." *Dart Cherokee*, 574 U.S. at 89 (internal citation omitted).

### III. ANALYSIS

Plaintiff argues Defendant failed to establish by a preponderance of the evidence the AIC exceeds $5,000,000.  (ECF No. 5-1.)  Plaintiff primarily attacks Defendant's evidence in support of removal, arguing the notice of removal is supported by "unreliable declaratory testimony, unreasonable assumptions, and missing information and data points. . .." (*Id.* at 4.)  Plaintiff asserts the AIC estimates are unreasonable because Defendant did not provide evidence to support its estimates in the notice of removal.  (*Id.* at 5–9.)

In opposition, Defendant argues it provided sufficient evidence to support removal, namely the declaration of Joyce Davis ("Ms. Davis") ("Davis Declaration"), Defendant's Vice President of Human Resources.  (ECF No. 8 at 8.)  Defendant contends its AIC calculation is based on data from the Davis Declaration and argues this calculation, supported by the Davis Declaration, shows by a preponderance of the evidence the damages for Plaintiff's claims exceed $5,000,000.  (*Id.*)  Furthermore, Defendant asserts it estimates the AIC exceeds $5,000,000 when accounting for only six of Plaintiff's nine claims and the AIC would be even higher if the remaining three claims were added in.[1]  (*Id.* at 15.)  Plaintiff disagrees and argues the Davis Declaration constitutes unreliable testimony with assumptions based on unverifiable information over which Defendant has unilateral access.  (ECF No. 5-1 at 4.)

The Court agrees with Defendant.  Contrary to Plaintiff's contention, Defendant was not required to submit evidence with its notice of removal establishing the AIC.  *See Dart Cherokee*, 574 U.S. at 87 ("[W]hen a defendant seeks federal-court adjudication, the defendant's amount in controversy allegation should be accepted when not contested by the plaintiff or questioned by the court.").  It was not until Plaintiff challenged the AIC, that Defendant was required to produce evidence to establish the AIC exceeds $5,000,000 by a preponderance of the evidence.  *Id.* at 88–89.  Here, Defendant provided such evidence both at the removal stage and in their opposition to the motion to remand.

The Davis Declaration contains factual evidence from someone with knowledge of Defendant's corporate organization, operations, policy-making procedures, workforce distribution, payroll information, employment records, and general business affairs.  (ECF No. 1-9 at 2.)  It provides information regarding employee hours, days worked in a week, and average hourly wages.  (*Id.*)  Specifically, the Davis Declaration details the following information for the putative class: (1) the pay period frequency; (2) an estimated number of non-exempt employees in California; (3) an estimated number of workweeks worked by employees; (4) the average hourly

---

[1] The six claims included in Defendant's AIC calculation are: (1) unpaid wages; (2) inaccurate wage statements; (3) timely payment violations; (4) rest break violations; (5) meal period violations; and (6) attorneys' fees.  (ECF No. 1-9 at 2–3.)

pay rate; (5) average shifts worked per week; and (6) an estimated number of terminated employees. (ECF No. 1-9 at 3.) Defendant used the factual evidence from the Davis Declaration to calculate good faith estimates of damages for at least six of Plaintiff's claims. The Davis Declaration and the estimated damages based on the factual evidence contained therein are sufficient to meet Defendant's burden. *See Avila v. Rue21, Inc.*, 432 F. Supp. 3d 1175, 1186 (E.D. Cal 2020) (finding a declaration from the defendant's "Associate Director of the Operational Finance Department" based on "his personal knowledge of [d]efendant's business records" to be sufficient); *Andrade v. Beacon Sales Acquisition, Inc.*, No. 19-cv-06963-CJC, 2019 WL 4855997, at *4 (C.D. Cal. Oct. 1, 2019) (holding "a declaration from a knowledgeable employee based on her analysis of regularly kept and created business records" sufficient to establish AIC). Accordingly, the Court finds Defendant provided sufficient factual evidence for purposes of calculating damage estimates.

The Court now turns to Defendant's estimated calculations for each claim to determine whether they are supported by the evidence and whether, based on these estimates, the AIC exceeds $5,000,000.

                A.     <u>Rest Period Violations Claim</u>

In the notice of removal, Defendant estimates the damages for alleged rest period violations are $4,608,000. (ECF No. 1 at 7.) Defendant bases its estimate on the following calculation: 72,000 workweeks x 4 violations per workweek x $16.00 average hourly rate. (*Id.*) Plaintiff argues these calculations are inaccurate as they presume all putative class members missed one rest period each day of the four-day workweek. (ECF No. 5-1 at 5–9.) Defendant disagrees, asserting the violation rate used in its calculation is based on Plaintiff's allegations that Defendant routinely failed to provide rest periods and "prohibited [employees] from leaving the premises during rest breaks." (ECF No. 1-4 at 10; ECF No. 8 at 12–13.)

Plaintiff's argument is unpersuasive. Where a plaintiff alleges routine rest period violations, this Court has "held that a 20 percent to 60 percent violation rate for . . . rest period violations [is] reasonable." *See Sanchez v. Abbott Labs.,* No. 2:20-cv-01436-TLN-AC, 2021 WL 2679057, at 4–5 (E.D. Cal. June 30, 2021). Here, Plaintiff alleges routine rest period violations

and Defendant bases its damages estimate on a violation rate within a 20 to 60 percent violation rate range. (ECF No. 1-4 at 10; ECF No. 8 at 12–13.)

In their opposition Defendant provides a more conservative calculation — one violation per week — than the calculation advanced in the notice of removal. (ECF No. 8 at 12–13.) Using this calculation Defendant estimates the damages for the alleged rest period violations are $1,152,000.[2] (*Id.*) This calculation amounts to an approximate rest period violation rate of 25 percent, which is reasonable. *See Sanchez*, 2021 WL 2679057, at 4–5. Accordingly, the Court finds Defendant has established by a preponderance of the evidence the rest period violations claim equals an AIC of at least $1,152,000.

     B.  Meal Period Violations Claim

In Defendant's notice of removal, estimated damages for alleged meal period violations amount to $2,304,000. (ECF No. 1 at 8.) Defendant bases this estimate on the following calculation: 72,000 workweeks x 4 shifts per workweek x .5 violation per shift x $16.00 average hourly rate. (*Id.*) Plaintiff disagrees with the estimate, arguing Defendant improperly assumes all putative class members experienced one meal period violation every two shifts. (ECF No 5-1 at 5.) Further, Plaintiff argues Defendant's meal period violations calculation is unreasonable because Defendant did not provide data or claim to have reviewed employee time records. (*Id.*) In opposition, Defendant argues the violation rate used in its calculation is based on Plaintiff's allegations Defendant routinely failed to provide meal breaks until after the fifth hour of employees' shifts. (ECF No. 8 at 11.)

Plaintiff's argument is unpersuasive. CAFA does not require defendants to research or prove a plaintiff's claims for damages. *See De Vega v. Baxter Healthcare Corp.*, No. 18-cv-06710-RS, 507 F. Supp. 3d 1214, 1217 (N.D. Cal. 2019). CAFA only requires defendants to prove the AIC by a preponderance of the evidence. *Id.* Defendant has met its burden.

In their opposition, Defendant again offers a more conservative calculation for this claim

---

[2]  Defendant's revised conservative calculation is based on the following formula: 72,000 workweeks x 1 violation per workweek x $16.00 average hourly rate. (ECF No. 8 at 12–13.)

— accounting for one meal period violation instead of two meal period violations per workweek.[3] (ECF No. 8 at 10–12.) Based on this revised calculation, Defendant estimates damages for the meal period violation claim are $1,152,000. (*Id.*) Defendant argues this estimated 25 percent violation rate is reasonable because Plaintiff alleges he and other employees were "routinely not provided meal breaks until after the fifth hour of their shifts," and meal periods were interrupted "from time to time." (ECF No. 1-4 at 10.) Defendant bases its estimate of the AIC for this claim on reasonable assumptions. *See Heatley v. Lin Rogers Elec. Contractors, Inc.,* No. SACV 22-000042-CJC, 2022 WL 715156, at *3 (C.D. Cal. Mar. 10, 2022) ("District courts have routinely found such [violation rate] calculations reasonable when a plaintiff has placed no limits on such claims in their complaint . . .."). Accordingly, the Court finds Defendant has established by a preponderance of the evidence the meal period violations claim equals an AIC of at least $1,152,000.

C. Waiting Time Penalties Claim

In the notice of removal, Defendant estimates waiting time penalties are $3,600,000. (ECF No. 1 at 10.) Defendant bases its estimate on the following calculation: 30 days x 7.5 hours per shift x $16.00 average hourly rate x 1,000 employees who have separated from the company since November 28, 2018. (*Id.*; ECF No. 1-9 at 2; ECF No. 8 at 9–10.)

Plaintiff argues Defendant unreasonably assumes all 1,000 employees who separated from the company after November 28, 2018, are eligible for the maximum recovery of penalties under California Labor Code ("Labor Code") § 203.[4] (ECF No. 5-1 at 7–8.) In opposition, Defendant argues it is reasonable to account for all separated employees when calculating waiting time penalties because Plaintiff's complaint relies on damages allegedly accrued by all putative class members, which includes the 1,000 employees who separated from the company after November 28, 2018. (ECF No. 8 at 9–10; ECF No. 1-4.) Because Plaintiff alleges Defendant is liable for

---

[3] Defendant's revised conservative calculation is based on the following formula: 72,000 workweeks x 1 violation per workweek x $16.00 average hourly rate. (ECF No. 8 at 10–12.)

[4] The maximum recovery of penalties under Labor Code § 203 is the daily pay rate for up to 30 days.

7

1    maximum waiting time penalties of 30 days of wages, it is reasonable to assume maximum
2    waiting time penalties — the daily pay rate for up to 30 days — for purposes of calculating
3    potential damages. (ECF No. 1-4 at 17–18; *See Nunes v. Home Depot U.S.A., Inc.*, No. 2:19-cv-
4    01207-JAM-DB, 2019 WL 4316903, at *3 (E.D. Cal. Sept. 12, 2019) (holding it was reasonable
5    to assume maximum waiting time penalties where the complaint demanded up to 30 days of
6    wages as penalties and made broad allegations of violations).) Furthermore, because Plaintiff
7    makes broad allegations of violations, "it is reasonable to assume the [separated] class members
8    suffered at least one violation (e.g., one missed meal or rest [period]) and were therefore not paid
9    all wages owed upon [separation]." *Nunes*, 2019 WL 4316903, at *3. Accordingly, the Court
10   finds Defendant has established by a preponderance of the evidence the waiting time penalties
11   claim equals an AIC of $3,600,000.

              D.    Attorneys' Fees

13       Plaintiff contests Defendant's estimated attorneys' fees of $2,900,000, which includes
14   potential fees accrued by all putative class members. (ECF No. 5-1 at 8–9; ECF No. 8 at 13–15.)
15       Plaintiff alleges Defendant violated various Labor Code sections, including Labor Code
16   §§ 226, 1194, which provide for attorneys' fees. (ECF No. 1-4 at 20.) It is well established that a
17   defendant may include attorneys' fees in calculating the AIC pursuant to CAFA. *See Simmons v.
18   PCR Tech.*, 209 F. Supp. 2d 1029, 1034 (N.D. Cal. 2002). The exact attorneys' fees in this case
19   are unknown. However, accounting for attorneys' fees equal to 25 percent of potential damages
20   is a common benchmark approved of by the Ninth Circuit in assessing attorneys' fees in class
21   actions. *Cabrera v. S. Valley Almond Co., LLC*, 2021 WL 5937585, at *11 (E.D. Cal. Dec. 16,
22   2021). Defendant argues $2,900,000 is equivalent to approximately 25 percent of the estimated
23   damages available by statute. (ECF No. 1 at 11; ECF No. 8 at 13–15.) Defendant bases this
24   calculation on $11,600,000, the original estimation of the AIC in its notice of removal. (ECF No.
25   1 at 11.) The Court finds no error in this calculation. However, even if the estimate for
26   attorneys' fee is based on the more conservative total outlined in Defendant's opposition of
27   $5,904,000, the attorney's fees would be $1,476,000. Accepting this as the total still places the
28   AIC over the $5,000,000 threshold. Accordingly, the Court finds Defendant has adequately

8

established that the approximate attorneys' fees to be at least $1,476,000.

Defendant's estimated damages reasonably yield an AIC of $7,380,000 arising from Plaintiff's claims for rest period violations, meal period violations, waiting time penalties, and attorneys' fees. This figure does not include estimated damages related to Plaintiff's other claims for unpaid overtimes wages, failure to reimburse business expenses, and failure to timely pay wages during employment. (ECF No. 1 at 12; ECF No. 1-4.) This figure is also based on the most conservative estimates provided by Defendant. Therefore, the Court finds Defendant has shown by a preponderance of the evidence the AIC in this case exceeds $5,000,000 as required by CAFA.

### IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Remand is DENIED. (ECF No. 5.) The parties are ordered to file a Joint Status Report with proposed dates for filing a motion for class certification within thirty (30) days of the date of this order.

IT IS SO ORDERED.

Date: August 10, 2023

_____
Troy L. Nunley
United States District Judge